UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SUSAN FITZPATRICK, on behalf of herself and all others similarly situated,<br><br>           Plaintiff,<br><br>     v.<br><br>TYSON FOODS, INC.,<br><br>           Defendant. | No.  2:16-cv-00058-JAM-EFB<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS** |

Defendant Tyson Foods ("Defendant") allegedly sold dog food unlawfully labeled as "Made in U.S.A." that Plaintiff Susan Fitzpatrick ("Plaintiff") purchased for her pet.  Defendant moves to dismiss Plaintiff's First Amended Complaint ("FAC") for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).  For the following reasons, the Court grants Defendant's motion with leave to amend.[1]

///

---

[1] This motion was determined to be suitable for decision without oral argument.  E.D. Cal. L.R. 230(g).  The hearing was scheduled for September 20, 2016.

1

I.   FACTUAL ALLEGATIONS AND PROCEDURAL BACKGROUND

The Court takes the following facts as true for purposes of this motion.

Plaintiff purchased Defendant's dog treats, including "Chicken Grillers," in 2014 and 2015. FAC ¶ 5. The products she purchased bore the label "Made in USA," id. ¶ 6, despite the fact that the "Chicken Grillers" contained tapioca starch, an ingredient derived from a plant not commercially grown in the United States, id. ¶¶ 6-7.

Plaintiff sued Tyson Foods on January 11, 2016, ECF No. 1, and filed her First Amended Complaint on May 16, 2016, ECF No. 16. She seeks to represent herself and a class of similarly situated California residents who, prior to January 1, 2016, purchased Tyson Foods' pet food products bearing a label indicating U.S.A. origin. FAC ¶ 17. Plaintiff brings two causes of action. In Count One, Plaintiff seeks relief under California's Unfair Competition Law ("UCL") for unfair conduct in violation of the UCL and violation of California's "Made in U.S.A." law, Business and Professions Code § 17533.7. Id. ¶ 26-29. In Count Two, Plaintiff seeks relief under the California Consumers Legal Remedies Act ("CLRA") for violations of this statute, id. ¶ 30-38, specifically, California Civil Code § 1770(a)(4) (deceptive representations or designations of geographic origin in connection with goods or services), Opp. at 13.

///

///

///

2

1                        II.   OPINION
2        A.   Judicial Notice
3        Defendant requests judicial notice of the original complaint
4   filed in this matter, ECF No. 1, and three filings in Susan
5   Fitzpatrick, etc. v. Tyson Foods, Inc., Case No. 2:15-cv-02285-
6   TLN-KJN.  The filings in the 2015 case are appropriate for
7   judicial notice as they are proceedings within the federal
8   judicial system and relate to the present matter.  See U.S. ex
9   rel. Robinson Rancheria Citizens Council v. Borneo, Inc., 971
10  F.2d 244, 248 (9th Cir. 1992) (citing St. Louis Baptist Temple,
11  Inc. V. FDIC, 605 F.2d 1169 (10th Cir. 1979)).  The complaint
12  filed on January 11, 2016, is already on the docket for this
13  case.  Accordingly, the Court grants Defendant's request for
14  judicial notice.
15       B.   Analysis
16       Defendant makes several arguments in support of its Motion
17  to Dismiss.  The Court first addresses the issue of whether the
18  current or former version of Cal. Bus. & Pro. Code § 17533.7
19  applies to Plaintiff's claims.
20            1.   Amendment to § 17533.7
21       Prior to January 1, 2016, it was "unlawful for any person,
22  firm, corporation or association to sell or offer for sale in
23  this State any merchandise on which merchandise or on its
24  container there appears the words 'Made in U.S.A.,' 'Made in
25  America,' 'U.S.A.,' or similar words when the merchandise or any
26  article, unit, or part thereof, has been entirely or
27  substantially made, manufactured, or produced outside of the
28  United States."  Cal. Bus. & Prof. Code § 17533.7 (2015).  Last

year, the California legislature amended § 17533.7 to include the following exclusions:

> (b) This section shall not apply to merchandise made, manufactured, or produced in the United States that has one or more articles, units, or parts from outside of the United States, if all of the articles, units, or parts of the merchandise obtained from outside the United States constitute not more than 5 percent of the final wholesale value of the manufactured product.
>
> (c)(1) This section shall not apply to merchandise made, manufactured, or produced in the United States that has one or more articles, units, or parts from outside of the United States, if both of the following apply:
>
> (A) The manufacturer of the merchandise shows that it can neither produce the article, unit, or part within the United States nor obtain the article, unit, or part of the merchandise from a domestic source.
>
> (B) All of the articles, units, or parts of the merchandise obtained from outside the United States constitute not more than 10 percent of the final wholesale value of the manufactured product.
>
> (2) The determination that the article, unit, or part of the merchandise cannot be made, manufactured, produced, or obtained within the United States from a domestic source shall not be based on the cost of the article, unit, or part.

Cal. Bus. & Prof. Code § 17533.7 (2016) (subsections (d) and (e) omitted).  In doing so, California shifted from a strict prohibition on domestic origin labeling to one that exempts sellers for selling products that were made in the United States but contain up to a certain percentage of foreign sourced components.

Defendant argues that the current version of § 17533.7, effective January 1, 2016, should apply to Plaintiff's claims.  MTD at 10.  Defendant contends that the prior version of the statute was repealed when the legislature amended the section and that, in the absence of a savings clause, no cause of action may

4

1  be brought under the former law.  MTD at 14.
2                  a.    Applicable Law
3      Plaintiff's claims arise under California law and, as such,
4  this Court is required to apply the law as it believes the
5  California Supreme Court would apply it.  See Gravquick A/S v.
6  Trimble Navigation Intern. Ltd., 323 F.3d 1219 (9th Cir. 2003).
7      California courts generally construe statutes to operate
8  prospectively unless the legislature clearly intends the statute
9  to have retrospective effect.  Tapia v. Superior Court, 53 Cal.
10 3d 282 (1991); Governing Board v. Mann, 18 Cal. 3d 819, 829
11 (1977); Callet v. Alioto, 210 Cal. 65, 67 (1930).  However, "the
12 courts correlatively hold under the common law that when a
13 pending action rests solely on a statutory basis, and when no
14 rights have vested under the statute, 'a repeal of such a statute
15 without a saving clause will terminate all pending actions based
16 thereon.'"  Mann, 18 Cal. 3d at 829 (1970) (quoting S. Serv. Co.,
17 Ltd. v. Los Angeles, 15 Cal. 2d 1, 11-12 (1940)); see also
18 Younger v. Superior Court, 21 Cal. 3d 102, 109 (1978).  "The
19 justification for this rule is that all statutory remedies are
20 pursued with full realization that the Legislature may abolish
21 the right to recover at any time."  Mann, 18 Cal. 3d at 829
22 (quoting Callet, 210 Cal. at 67-68).  This common law principle
23 is codified at California Government Code § 9606: "Any statute
24 may be repealed at any time, except when vested rights would be
25 impaired.  Persons acting under any statute act in contemplation
26 of this power of repeal."  Recently, California appellate courts
27 have restated the principle: "[W]here 'the legislature has
28 conferred a remedy and withdraws it *by amendment or repeal* of the

1   remedial statute, the new statutory scheme may be applied to
2   pending actions without triggering retrospectivity concerns.'"
3   Zipperer v. Cnty. of Santa Clara, 133 Cal.App.4th 1013, 1023
4   (2005) (quoting Brenton v. Metabolife Int'l, Inc., 116
5   Cal.App.4th 679, 690 (2004)) (emphasis added).  Further,
6   "legislative action can effect a partial repeal of an existing
7   statute."  Id. (citations and internal quotation marks omitted).
8        In her Opposition, Plaintiff asserts that the pre-amendment
9   statute should apply to her claims because the amendment was not
10  a repeal.  Opp. at 4.  Ignoring the quoted language in Zipperer,
11  which expressly articulates that either repeal *or amendment*
12  withdrawing the statutory remedy triggers the rule, Plaintiff
13  argues that by leaving the original language in the statute and
14  adding exceptions to the rule, the Legislature "d[id] not repeal
15  anything."  Opp. at 4.  Instead, she contends that the
16  Legislature "create[d] a sort of safe-harbor provision that
17  producers of mostly American-made products may take advantage of
18  after January 1, 2016."  Opp. 4–5.  Plaintiff casts the
19  determinative question as "whether, in changing the law, the
20  legislature has chosen to 'take away the right of action
21  itself.'"  Opp. at 6 (quoting Zipperer, 133 Cal.App.4th at 1025).
22  Plaintiff essentially argues that because the California
23  Legislature did not completely eliminate the private right of
24  action for mislabeled "Made in U.S.A." products, the amendment
25  does not trigger the repeal rule.
26       Plaintiff is incorrect.  The Legislature did take away the
27  right of action itself: it took away the right of action against
28  sellers whose products are made in the U.S.A. but comprised of

6

ingredients sourced from outside of the U.S.A., up to a certain threshold. The Legislature need not repeal a statute in its entirety but may instead partially repeal a statute by taking away the right of action in certain situations, as it did here. See Brenton, 116 Cal.App.4th 679 (finding that a new statute excepting certain claims from the Anti-SLAPP Act effected an amendment or partial repeal of the Act); Mann, 18 Cal. 3d 819 (finding that Health and Safety Code § 11361.7(b) impliedly repealed only those parts of Education Code § 13403(h) in conflict with the later enacted statute).

The California Court of Appeal's analysis in Zipperer is instructive. The pertinent claim in the Zipperer case arose under the Solar Shade Control Act, which created a statutory private right of action for owners of solar collectors harmed by shade caused by trees on adjacent properties. Zipperer, 133 Cal.App.4th at 1021. The Act also created an exemption provision that cities and counties could invoke, via ordinance, to foreclose action against them. Id. The defendant, the County of Santa Clara, had passed such an ordinance and claimed that it eliminated the plaintiffs' cause of action, even though the plaintiffs alleged harm suffered prior to the ordinance's passage. Id. at 1022.

Applying the principles stated in Mann and its progeny, the Zipperer court used four factors to determine whether the ordinance eliminated the plaintiffs' cause of action. For the first three factors, the court considered whether the plaintiffs' claim was statutory (it was), whether their rights had vested under the statute (they had not), and whether the legislature had

eliminated the statutory remedy before a final judgment (it had). Id. at 1023–24. Lastly, the court considered the nature of the mechanism by which the right of action was eliminated. Id. at 1024–25. The court recognized that the typical mechanism for such elimination is repeal or amendment of the remedial statute. Id. at 1024. However, the court noted that even without express words of repeal,

> ["]the effect is the same in so far as the application of the principles is concerned when the legislature by apt expression has withdrawn the right and remedy in particular cases, including all pending actions based thereon." The critical point is that "the legislature may take away the right of action itself." . . . [W]e look to the substance of the legislation—not its label— to determine whether it operates as a repeal. The pivotal issue is whether the legislation constitutes "a substantial reversal of legislative policy" that represents "the adoption of an entirely new philosophy" vis-à-vis the prior enactment.

Id. at 1024–25. (internal citations omitted); quoting Southern Service Co., Ltd., 15 Cal. 2d at 13; People v. One 1953 Buick, 57 Cal. 2d 358, 363 (1962)).

The Zipperer court concluded that the exemption provision operated as a valid repeal method. Zipperer, 133 Cal.App.4th at 1025. Even without any expressly repealing language, the "statutory authority for plaintiff's action ha[d] been withdrawn," removing "the right and remedy that otherwise would [have been] available to plaintiffs." Id. (internal quotations and citations omitted). Although the provision merely exempted certain—but not all—defendants from the Act's reach, the court found that this "legislative choice embodies 'a substantial reversal of the legislative policy' that underpins the remainder of the Act and an 'entirely new philosophy' concerning its

8

1    mandatory application to local jurisdictions." Id. at 1025.  The
2    court held that the ordinance enacted under the exemption
3    provision extinguished the statutory claim and thus the
4    plaintiffs' cause of action.
5         Applying the four factors to the present matter, it is clear
6    that the amendment to § 17533.7 similarly extinguished
7    Plaintiff's cause of action.  First, her claim under § 17533.7 is
8    statutory in nature.  The amendment went into effect before final
9    judgment in this case and before any rights vested, thus the
10   second and third factors are satisfied as well.
11        Fourth, the Legislature used a "typical[]" mechanism to
12   abolish the right of action: an amendment.  See  Zipperer, 133
13   Cal.App.4th at 1024.  Where, as here, the effect is the same, any
14   distinction between the labels "amendment" and "repeal" is
15   immaterial.  See, e.g., Younger, 21 Cal. 3d at 110-11 (holding
16   that an "amendment" that eliminated a prior procedure for records
17   repealed statutory authority for that procedure); Brenton, 116
18   Cal.App.4th at 690 (concluding that a new section amending the
19   Act to except certain claims from applicability of the
20   statutorily conferred remedy applied to the pending case); Dep't
21   of Soc. Welfare v. Wingo, 77 Cal.App.2d 316 (1946) ("[T]he repeal
22   of the statute without a saving clause before a judgment becomes
23   final destroys the right of action. The same rule is applied to
24   an amendment of a statute.").  Labels aside, the substance of the
25   amendment constitutes a reversal of legislative policy.  The
26   California Legislature decided that something once unlawful is
27   now permissible and has eliminated a cause of action.  This
28   drastic change invokes the repeal rule.  Plaintiff's concerns

regarding legislative history, see Opp. at 7, are not relevant in this context: "[t]he only legislative intent relevant in such circumstances would be a determination to save this proceeding from the ordinary effect of repeal illustrated by such cases as Mann." Younger, 21 Cal. 3d at 110 (1978). In the absence of a savings clause or savings implied by contemporaneous legislation, "no such intent appears." Id.

In so holding, this Court joins the company of Judge Wu of the United States District Court for the Central District of California, who reached the same conclusion this past June. See Rossetti v. Stearn's Products, Inc., CV 16-1875-GW(SSx), 2016 WL 3277295 (C.D. Cal. June 6, 2016). Plaintiff's quibbles with the authority Judge Wu relied upon do not detract from the essential principles supporting that, and this, decision.

### b. Plaintiff's Remaining Claims

In her First Amended Complaint, Plaintiff alleges facts to support her claims under the pre-2016 version of § 17533.7. FAC ¶ 27. Because her complaint does not include any allegations regarding the percentage of foreign sourced materials contained in Defendant's products, see FAC ¶¶ 5-16, Plaintiff has failed to adequately allege a violation of the current version of § 17533.7. The remaining issue is whether this failure also extinguishes Plaintiff's more general UCL claim for unfair conduct, Cal. Bus. & Prof. Code §§ 17200, et seq., and CLRA claim for deceptive representations of geographic origin, Cal. Civ. Code § 1770(a)(4).

Neither party briefed this issue. Plaintiff makes no argument regarding the status of her CLRA and more general UCL

claims in the event that the amended statute applies to her case. Defendant seems to presume that a failure to state a claim under § 17533.7 defeats all of Plaintiff's claims. MTD at 5, 10; Reply at 1, 3.  Defendant's conclusion is not entirely obvious.  A plaintiff may still have a cause of action under the UCL for unlawful OR unfair OR fraudulent practice; "a practice may be deemed unfair even if not specifically proscribed by some other law [(i.e., § 17533.7)]." Cel-tech Commc'ns, Inc. v. L.A. Cellular Tel. Co., 20 Cal. 4th 163, 180 (1999).  Additionally, the CLRA has its own list of proscribed conduct, Cal. Civ. Code § 1770, and does not rely on § 17533.7 as a predicate offense

Nevertheless, the Court concludes that California's safe harbor doctrine bars Plaintiff's UCL and CLRA claims.  The California Supreme Court addressed the safe harbor rule in relation to general UCL actions in Cel-tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.:

> Specific legislation may limit the judiciary's power to declare conduct unfair.  If the Legislature has permitted certain conduct or considered a situation and concluded no action should lie, courts may not override that determination. When specific legislation provides a "safe harbor," plaintiffs may not use the general unfair competition law to assault that harbor.

20 Cal. 4th at 182.  Courts have applied the safe harbor rule in the CLRA context as well.  See, e.g., Ebner v. Fresh Inc., 818 F.3d 799, 805 (2016) (holding that, where defendant complied with federal and state labeling law, California's safe harbor doctrine barred consumer's claim that a cosmetics manufacturer's label was deceptive and misleading in violation of UCL, CLRA, and False Advertising Law [("FAL")]); Barber v. Nestle USA, Inc., 154 F. Supp. 3d 954 (C.D. Cal. 2015) (holding that the safe harbor

doctrine barred Plaintiff's UCL, CLRA, and FAL claims for inadequate disclosures because the California Legislature chose to only require limited disclosures); Bourgi v. W. Covina Motors, Inc., 166 Cal.App.4th 1649, 1661 (2008) (holding that the CLRA action could not advance if the car repairs at issue qualified for the Vehicle Code's safe harbor provision).

The California Legislature amended § 17533.7 to prohibit domestic origin labels in some circumstances and not in others, evidently concluding that no action should lie in the latter situation. California's safe harbor doctrine applies in this case and unless Plaintiff can plead facts actionable under the amended statute, her claims must be dismissed. Given this disposition, the Court need not address the merits of Defendant's other arguments in support of its motion regarding the specificity required under Fed. R. Civ. P. 9(b), Plaintiff's standing to seek injunctive relief, or the propriety of equitable relief.

Although Plaintiff has already filed, dismissed, refiled, and amended her complaint in this case, this Order is the Court's first ruling on the merits and it is not clear that further amendment would be futile. Plaintiff will therefore have one final opportunity to properly plead her claims.

### III.   SANCTIONS

The Court issued its Order re Filing Requirements for Cases Assigned to Judge Mendez ("Order") on January 11, 2016. ECF No. 5-2. The Order limits memoranda in support of and in opposition to motions to dismiss to fifteen pages and reply memoranda in

support of motions to dismiss to five pages.  The Order also states that violations of the page limit will result in monetary sanctions against counsel in the amount of $50.00 per page and that the Court will not consider any arguments made past the page limit.  The Defendant's Memorandum in support of its Motion to Dismiss is four pages longer than the page limit allowed by the Court, and the reply brief also exceeds the Court's limit by four pages.  Plaintiff's Opposition is two and a half pages longer than the page limit.  As such, the Court has not considered any arguments made after page fifteen of either memorandum and page five of Defendant's reply.  In addition, counsel for Defendant is ordered to pay $400.00 and counsel for Plaintiff is ordered to pay $125.00 in sanctions to the Clerk of the Court within five days of the date of this Order.

## IV.   ORDER

For the reasons set forth above, the Court GRANTS WITH LEAVE TO AMEND Defendant's Motion to Dismiss.

Plaintiff's amended complaint must be filed within twenty days from the date of this Order.  Defendant's responsive pleading is due within twenty days thereafter.

IT IS SO ORDERED.

Dated: September 26, 2016

_____
JOHN A. MENDEZ,
UNITED STATES DISTRICT JUDGE

13